(162 App. Div. 200)

## BLOSS v. ONEIDA RY. CO.

(Supreme Court, Appellate Division, Third Department.    May 6, 1914.)

1. RAILROADS (§ 115*)—EQUIPMENT—THIRD RAIL—USE—REQUISITE CONSENT
   —PRESUMPTIONS.
   Where an electric third rail had been used by a railway company to
   furnish motive power for five years, such fact was presumptive evidence
   that the company had obtained the consent of the local authorities, prop-
   erty owners, and public service commission to the construction, main-
   tenance, and operation of the road by electricity, required by Railroad
   Law (Consol. Laws, c. 49) §§ 171–180.
   
   [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 372;  Dec. Dig.
   § 115.*]

2. RAILROADS (§ 94*)—CONSTRUCTION—ELECTRIC THIRD RAIL.
   That an electric third rail had been used to furnish motive power for
   five years did not justify a presumption that the railroad was author-
   ized to extend the rail into a highway, where it crossed the right of way
   in such manner as to narrow the four rod road crossing to one 26 or 27
   feet wide.
   
   [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 266–273;  Dec.
   Dig. § 94.*]

3. ELECTRICITY (§ 19*) — MOTIVE POWER — ELECTRIC THIRD RAIL — LOCATION
   WITHIN HIGHWAY CROSSING—EVIDENCE.
   Where a railroad was authorized to construct an electric third rail to
   furnish motive power, it was not for that reason authorized to extend the
   rail into an open highway crossing so as to leave only 27 feet between
   the ends of the rails at the crossing, unless it was necessary to do so to
   use the third rail system, and hence evidence that the distance between
   the rails at other crossings along the line was greater than that in ques-
   tion was admissible to show that the rails projected unnecessarily into
   the highway.
   
   [Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11;  Dec. Dig.
   § 19.*]

4. ELECTRICITY (§ 16*)—THIRD RAIL SYSTEM—NUISANCE.
   Where an electric third rail used by a railroad to furnish motive power
   projected into a highway crossing unnecessarily, it was a nuisance, and
   the railroad was liable for an injury occasioned thereby.
   
   [Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9;  Dec. Dig.
   § 16.*]

5. ELECTRICITY (§ 19*)—ELECTRIC THIRD RAIL—ENCROACHMENT ON HIGHWAY
   —ACTIONS.
   Where defendant railroad was authorized to use an electric third rail
   to furnish motive power and in crossing a highway projected such rail
   into the crossing space so as to narrow it from 4 rods to 27 feet, and
   one of plaintiff's horses while running along the highway came in con-
   tact with the rail at the crossing and was electrocuted, the burden was
   on defendant to show that it had acquired the right to so encroach on the
   crossing.
   
   [Ed. Note.—For other cases, see Electricity Cent. Dig. § 11;  Dec. Dig.
   § 19.*]

Appeal from Madison County Court.

Action by Peter J. Bloss against the Oneida Railway Company.
From a judgment dismissing plaintiff's complaint on nonsuit, he ap-
peals.  Reversed, and new trial granted.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Campbell & Woolsey, of Canastota (Albert E. Campbell, of Canastota, of counsel), for appellant.

E. L. Hunt, of Oneida, for respondent.

JOHN M. KELLOGG, J. The plaintiff's team ran away along the highway which is crossed, substantially at right angles, by the defendant's tracks at Chittenango station. One of the horses slipped at the crossing, came in contact with the electric third rail, and was electrocuted, and the plaintiff has brought this action to recover, claiming that the third rail, charged with electricity, was illegally in the highway at the place where the injury was sustained.

[1, 2] The highway was a four-rod road. The defendant, as lessee, was using the tracks of the West Shore Railroad Company, and was maintaining the third rail to propel its cars by electricity. The third rail is near the other rails, and is fastened by uprights from the ties, about 18 inches above them, and is covered by a board or fiber upon three sides; the under part being exposed. Under the traveled part of the road the electric current is carried by a cable from the end of the projecting rail, on either side of the traveled part of the road, leaving a distance between the rails of only 26 or 27 feet. The rail terminated on either side of the road upon a cattle guard, which projected further out into the highway. This third rail had been used as a motive power for about five years. Under sections 171 and 180 of the Railroad Law, that fact is presumptive evidence that the requisite consents of the local authorities, property owners, and the Public Service Commission, to the construction, maintenance, and operation of the road by electricity had been obtained. It is not necessary, however, to presume that the defendant was authorized to bring its electric third rail into the highway, narrowing it from a four-rod road to one 26 or 27 feet wide.

[3] We need not determine whether under the law as it exists the defendant may be authorized to use the electric third rail in the public highway in the manner indicated in this case. It is sufficient that there is no evidence that any such authority was given. At common law the structure would be a nuisance, and, while the defendant had permission to use electric power, it must do it in recognition of the rights of the public in the highway except so far as the statutes necessarily indicate otherwise. Where the motive power is changed under section 180 of the Railroad Law, the railroad corporation "may make any changes in the construction of its road or roadbed or other property rendered necessary by the change in its motive power." The defendant had no right to bring its third rail into the highway unless it was necessary so to do in order to use the third rail system and it was authorized to use electric power in that manner. Where the third rail ceases, the current of electricity goes under the highway in a cable, and the car must proceed under its own momentum until it reaches the rail upon the other side. There is no evidence that a greater space

than 27 feet is not practicable. The evidence does not indicate that it was necessary that the third rail should project into the highway at all. The plaintiff offered to show the distance between these rails at other crossings on this line. The evidence was rejected, and he excepted. If it had been shown that at other places a much greater space existed than at this point, it would have indicated that the rails unnecessarily projected into the highway. The exclusion of this evidence was error.

[4] If the third rail projected into the highway unnecessarily, it was a nuisance, and the defendant is liable for any injury occasioned thereby. Caruzo. v. Troy Gas Company, 153 App. Div. 431, 138 N. Y. Supp. 279; Id., 209 N. Y. 510, 102 N. E. 1100. The third rail terminated on the cattle guard, but there is nothing in the record to show that the cattle guard was legally in the highway.

[5] It was necessary for the defendant to show just what rights it had obtained to make this use of the highway, which prima facie is illegal. The mere consent to operate its road by electricity or by the third rail does not establish the legality of this encroachment upon the highway. We are not determining that any law permits the local authorities or the public service commission to permit a third rail, charged with deadly current, to encroach upon the highway within 18 inches from the ground; we are holding that if the defendant claims such a right it must show the facts fully establishing it.

The judgment should therefore be reversed, and a new trial granted in the County Court, with costs to the appellant to abide the event. All concur.